WILLIAM HERRING, Appellant, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY et al., Respondents.

Unsecured creditors of a railroad corporation are not necessary or proper parties to, and have no right to intervene in, an action to foreclose a mortgage upon its property and franchises; any adjudication made therein against the mortgagor is binding upon them.

Where at the time of the commencement of such an action an action was pending, brought by the attorney-general on behalf of the People, to dissolve the corporation on the ground of insolvency, in which action a temporary receiver had been appointed, *held* that such receiver was not a necessary party to the foreclosure suit.

*It seems* that such temporary receiver, appointed in an action brought prior to the passage of the Code of Civil Procedure under the provisions of the Revised Statutes, was not vested with title to the property of the corporation; the title remained in the corporation until final judgment of dissolution and the appointment of the final receiver. Nor was such temporary receiver a trustee for the creditors ; he was a mere custodian and manager of the property under the direction of the court during the pendency of the action.

Statement of case.

The People are not in any sense a proper party to the foreclosure suit.

*It seems*, however, the court has power in its discretion to allow the People or the receiver to intervene in said action.

The court had power in the action brought by the People, to permit the foreclosure action to be commenced, to appoint a receiver therein to supersede the receiver appointed in the People's action, and to transfer all his duties to the receiver in the foreclosure suit.

The provision of the Revised Statutes (2 R. S. 463, § 38), in regard to the dissolution of corporations neglecting or refusing to pay or discharge their debts, or suspending their ordinary business for a year, was not repealed by the Code of Procedure and remained in force until the passage of the Code of Civil Procedure.

The provisions of the Code of Procedure (§ 428 *et seq.*) in regard to the dissolution of corporations, were simply intended to substitute actions, in the form prescribed, in the place of writs of *scire facias* and *quo warranto.*

In such an action a temporary receiver could not be appointed.

Under said provision of the Revised Statutes an action in equity, for a dissolution of the corporation in the cases mentioned, was authorized.

In such an action the court had power to appoint both a temporary and final receivers, whose action was not regulated by statute; but they were simply clothed with the powers and charged with the duties devolved upon them by orders of the court.

After the commencement of an action by the People to dissolve a railroad corporation, and the appointment of a temporary receiver therein, which action was commenced in 1875, under the provisions of the Revised Statutes, by order of the court therein, the holder of certain mortgages upon its railway franchises and other property, was permitted to foreclose said mortgages. A foreclosure suit was commenced and the receiver in the former action was also appointed temporary receiver in this action. The corporation was the owner of certain stocks and bonds, not in terms covered by the mortgages. An order was made on proper notice in the foreclosure suit, that the receiver therein should hold and deal with the stocks and bonds as a part of the general fund embraced in the mortgages; by the judgment in said action it was determined that they were subject to the mortgages and liable to be sold with the mortgaged premises, and such sale was directed. They were so sold absolutely, the sale was confirmed by the court, and a conveyance directed, which was made. *Held*, that the adjudications so made absolutely bound all the parties to the action, and neither the corporation nor any of its general creditors could be heard to impeach in a collateral action those adjudications; that the Supreme Court having general jurisdiction of the parties and the subject-matter, it was conclusively to be presumed that it had sufficient facts before it to authorize the adjudications.

*It seems,* where a court, having jurisdiction of the subject-matter of an action and the parties, pronounces judgment upon insufficient or illegal evidence, or mistakes the evidence or the law, the only remedy of any person aggrieved, is by an appeal or a motion in the action; the judgment cannot be assailed collaterally.

The railroad corporation, after the commencement of the foreclosure action consented to the entry of judgment therein. *Held,* that this did not make the judgment one by confession, within the meaning of the provision of the Revised Statutes (2 R. S. 469, § 71), which declares judgments confessed by a corporation, after the filing of a petition for its dissolution, to be absolutely void as against the receiver appointed on such petition and as against the creditors of the corporation; that the confession of judgment so prohibited is one made by the corporation as its voluntary act without the interference of the court.

After the confirmation of the report of sale in the foreclosure suit, the court granted an order directing the receiver to deliver the property sold to a new corporation to whom the purchasers had assigned, subject to the rights of the People as ascertained in the action brought by them then pending, and the property was so delivered subject to the terms of the order. A supplemental pleading was thereafter served in the People's action, setting up the sale and conveyance in the foreclosure suit, and alleging that the said stocks and bonds were improperly and unlawfully included in the judgment, sale and conveyances, and denying that the purchasers acquired any title thereto. The matter was referred to a referee and after a hearing before him and upon the coming in of his report, judgment was rendered, adjudging in substance that the property in question was covered by the mortgages, and that the sale and conveyance vested in the purchasers a good and valid title. The unsecured creditors had no notice of the hearing. By the judgment the corporation was dissolved and the temporary receiver was appointed final receiver. *Held,* that, assuming, the provisions of the Code of Procedure applied to the final receiver, until his appointment as such, the unsecured creditors had no right to notice, they were represented by the People and their debtor, and were bound by the judgment; that the court was not required to defer the litigation as to the property in question until after the appointment of a final receiver, but had authority to permit it to proceed to a conclusion before final judgment; and, therefore, as when the final receiver was appointed, the stocks and bonds were no part of the estate coming to his hands as such, the creditors had no right to notice or a hearing in regard thereto.

The rights which the statutes secure to creditors in the case of a statutory final receiver of an insolvent corporation are such only as pertain to the property which comes to the receiver to be administered and distributed to creditors by him, and they are not entitled to notice or a hearing except as to claims upon, and their rights in, such property.

Also *held*, that the disposition so made of the property in question was not violative of constitutional rights ; that it did not impair the obligations of the creditor's contracts or deprive them of due process of law.

The equitable rule, which gives a final receiver title to the debtor's property, by relation as of the commencement of the action, is not applicable to property which has been legally disposed of under the direction of the court.

*It seems*, that if the reference, hearing and decision as to the title to the property in question, had been after judgment and the appointment of a final receiver, and, conceding he had all the powers of a receiver in case of the voluntary dissolution of a corporation, the conclusion would be the same.

The provisions of the Code of Procedure in regard to the dissolution of corporations and the powers and duties of receivers thereof, and the provisions of the Revised Statutes in regard thereto collated and discussed.

*It seems*, that so much of said provisions as provide for notice by the receiver to creditors are mostly directory and compliance therewith was not essential to the jurisdiction of the court ; their omission constitutes an irregularity against which a party aggrieved could have had relief by application in the action or proceeding not in a collateral action.

*It seems*, also, that the two systems of procedure against corporations provided in the Revised Statutes, *i. e.*, the one by an equitable action brought without leave of the court and the other by a legal action brought with leave have been continued under the Codes, and until the passage of the Code of Civil Procedure there was no statute regulating the powers and duties of receivers appointed in the equitable actions.

(Argued March 17, 1887; decided April 19, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made January 9, 1885, which affirmed a judgment entered upon an order sustaining a demurrer to plantiff's complaint.

The plaintiff commenced this action on behalf of himself and all other creditors of the Erie Railway Company similarly situated, and made parties defendants the New York, Lake Erie and Western Railroad Company, the Farmers' Loan and Trust Company and Hugh J. Jewett, receiver of the Erie Railway Company. In his complaint he alleges that prior to its dissolution the Erie Railway Company was a cor-

poration organized under the laws of this State; that in the year 1870, to secure the payment of its bonds amounting to about $16,000,000, it executed and delivered to the Farmers' Loan and Trust Company, as trustee, a mortgage of its railway and certain property then owned by it which railway and property were described in the mortgage in the following words : " All and singular the railway of the party of the first part from and including Piermont on the Hudson river to and including the final terminus of the said railway on Lake Erie, and the railway known as the Newburgh branch, from Newburgh to the main line, and also all that part of the railway designated as the Buffalo branch of the Erie railway, extending from Hornellsville to Attica, in the State of New York, and also all other railways belonging to the party of the first part in the States of New York, Pennsylvania and New Jersey, or any of them, together with all the lands, track, lines, rails, bridges, ways, buildings, piers, wharves, structures, erections, fences, walls, fixtures, franchises, privileges and rights of the said company, and also all the locomotives, engines, tenders, cars, carriages, tools, machinery, manufactured or unmanufactured materials, coal, wood and supplies of every kind, belonging or appertaining to the party of the first part and all the tolls, income, issues and profits arising out of the said property, and all rights to receive or recover the same; also all the estate, right, title and interest, terms and remainder of terms, franchises and privileges and rights of action of whatsoever name or nature in law or in equity, conveyed or assigned unto the New York and Erie Railroad Company, or unto the Erie Railway Company by the Union Railroad Company, by the Buffalo, New York and Erie Railroad Company, by the Buffalo, Bradford & Pittsburgh Railroad Company, by the Rochester & Genesee Valley Railroad Company and by the Long Dock Company."

That afterward, in 1874, to secure the payment of other bonds, amounting to about $24,000,000, it executed to the same trustee another mortgage upon its railway and property by the same description contained in the prior mortgage;

that about the 25th day of May, 1875, an action was brought by the attorney general in the Supreme Court of this State in the name of the People as plaintiff against the Erie Railway Company, its directors and certain trustees under various mortgages, including the Farmers' Loan and Trust Company as defendants; that the relief prayed for in that action, among other things, was that the corporation should be dissolved and wound up, that the plaintiff should have judgment accordingly and that in the meantime, while the action was pending, Jewett, president of the company, should be appointed receiver, to take, hold and possess, under the immediate authority and direction of the court, the franchise and property, with full power to operate the road and to preserve its franchises and corporate existence until final judgment, and with such other and general powers as it is usual and in accordance with the rules and practice of the court to confer upon receivers in like cases; that on the 26th day of May, 1875, on the application of the attorney-general in that action, Jewett was appointed receiver of the company in pursuance of the prayer of the complaint; that by virtue of such appointment, Jewett undertook the duties of the receivership, and all the estate of the Erie company and its franchises thereupon became vested in him as receiver, to be administered and distributed by him in accordance with the statutes in such case provided; that about the 15th day of June, 1875, the defendant, The Farmers Loan and Trust Company, as trustee, commenced an action against the Erie Railway Company for the foreclosure of the two mortgages above mentioned; that in that action the Trust Company was sole plaintiff and the Erie Railway Company, and the trustees under prior mortgages were the only defendants; that subsequently the summons and complaint in that action were amended so as to make certain creditors of the Erie Company codefendants therein; but Jewett, as receiver in the people's action was at no time made a party to that action; that the complaint in that action alleged, among other things, the insolvency of the Erie Company, that it had made default in

the payment of the interest falling due upon its bonds; that to the extent of the rightful interest in the mortgaged premises of the Trust Company as the mortgagee, its rights were in law and equity superior to the rights of the people of the State of New York; that the Trust Company was entitled to have the mortgaged premises foreclosed and sold for the payment and satisfaction of the respective debts to secure which the premises were mortgaged to it; and that the prayer of the complaint demanded that an accounting should be had as to the bonds outstanding under the mortgages; that Jewett should be appointed receiver of the mortgaged premises and property in that action, and that the mortgaged premises and property should be sold and the proceeds applied for the payment of the mortgage debts, and that the complaint further demanded in words following, to wit: "That an inquiry may be had and an account taken of and concerning all and singular the premises and property so mortgaged to this plaintiff as aforesaid in order that it may be fully and at large ascertained whereof the said mortgaged premises consist." That on the 15th day of June, 1876, Jewett was appointed receiver in that action of all the property covered by the two mortgages; that the estate of the Erie Railway Company at the time Jewett was appointed receiver in the People's action, consisted not only of the railway and the property described in the two mortgages, but also of a large amount of other property, such as bonds and stocks in other corporations, which property was not appurtenant to the mortgaged premises, not subject to the lien of the mortgages or either of them, and not in any manner necessary for the pratical operation of the mortgaged premises, or to the use, management or maintenance thereof, amounting to many millions of dollars in value; that part of such property had been acquired by the Erie Company subsequently to February 4, 1874, the date of the second mortgage; that the property not subject to the lien of the mortgages constituted a large and valuable fund applicable to the payment of the general and unsecured creditors of the Erie Company; that

the Farmers' Loan and Trust Company, or its attorney, admitted in the foreclosure action the existence of such fund and the necessity of an accounting with respect to the same, on a motion in that action, in which it was made to appear to the court, by the affidavit of such attorney, on or about the 6th day of April, 1876, that there were in the hands of Jewett, as receiver, stocks and bonds as before mentioned, representing interests in other corporations to the nominal amount of more than $22,000,000, which belonged to the estate of the Erie Company, that an unascertained portion of such securities was covered by the two mortgages, that another unascertained portion had been acquired with moneys supplied by the respective parties for whom the Farmers' Loan and Trust Company was trustee; that advances had been made upon or against a further portion thereof out of the income of the mortgaged property in the hands of the receiver, that the receiver had paid out of the income of the mortgaged premises in his hands certain debts of the Erie Railway Company contracted prior to the appointment of the receiver for labor, salaries and supplies which ought, of right, to be reimbursed to the mortgage creditors out of the assets of the Erie Company not covered by the mortgages, that certain resulting trusts existed in favor of the mortgage creditors in such securities, and that such securities, or the proceeds thereof, in case of their sale, should be dealt with by the receiver as a part of the general funds in his hands under the several mortgages; and that it was alleged, in the affidavit, that it was impracticable at that time to take, state and adjust the account, and to finally account in respect to the matters above referred to, and that such final accounting and adjustment could only be had with due regard to the rights and interests of the parties upon the accounting preliminary to the final decrees, and by the final decrees to be made upon the basis of such accounting. That an order was made on that motion in the foreclosure action, on or about the 6th day of April, 1876, authorizing the receiver to treat the fund as a part of the general fund and estate embraced in the two mortgages " without prejudice to any equitable rights and

interests of the respective parties which may be established
on final accounting." That during the pendency of the
foreclosure action, the holders of the bonds and stocks of
the Erie Company formed a plan for the formation of a new
corporation in which their interests were to be represented;
but no provision whatever was made in the plan of reorgan-
ization for the unsecured debts or obligations of the Erie
Company; that the reorganization was consummated in
pursuance of the plan and the sanction of the court and with
the co-operation of Jewett, as receiver in the foreclosure action,
and the new organization thus formed is the defendant, the
Lake Erie and Western Railroad Company; that such pro-
ceedings were had in the foreclosure action that judgment of
sale was rendered therein on or about the 7th day of Novem-
ber, 1877, and that the decree recited, among other things, as
follows: " That the receiver, in the course of his receivership,
has lawfully acquired and become possessed of a large amount
of stocks in other corporations, bonds and other obligations
for the payment of money, a large part of which has been
lawfully and properly pledged by him to secure the payment of
money borrowed by him which he was authorized to borrow for
the general purposes of his receivership, and which will proba-
bly remain to a greater or less extent so pledged at the time of
the sale of the mortgaged premises. That all or nearly all of
such stocks, bonds, obligations and securities are embraced and
described in the inventory of the mortgaged premises and
property made and filed in this case by the receiver in pur-
suance of the order of this court. That the said stocks, bonds,
securities and obligations, are held by the receiver as part and
parcel of the property and premises mortgaged to the plain-
tiff * * * and as the product of the rents, profits and
issues of the mortgaged premises during the said receivership,
subject, however, to the liens existing thereon by reason of such
pledge or pledges thereof as hereinbefore stated; " " that the
referee appointed to sell the mortgaged premises should be
authorized, at the request of the plaintiff's attorneys, to expose
for sale and sell as part of the mortgaged premises all and

singular the said stocks, bonds, obligations, accounts and evidences of indebtedness and other choses in action of which the receiver may have become lawfully possessed in any way or manner during his receivership, subject, however, to any lawful lien or liens existing thereon, whether created by the receiver or otherwise;" that it was by the foreclosure judgment ordered, adjudged and decreed, among other things, that sale be made of "all and singular the mortgaged premises, franchises and property, both real, personal and mixed, mentioned in the complaint in this action and hereinafter mentioned," being the same premises and property described in the two mortgages, with the following addition: "And this description is to be understood as embracing and including all and singular the choses in action, stocks, bonds, book accounts, bills receivable and other evidences of indebtedness, leasehold estates, contracts and other property hereinbefore mentioned;" that a sale was had under the judgment by a referee appointed for that purpose on the 24th day of April, 1878; that the terms of sale as announced by the referee described the property to be sold by the words of description contained in the mortgages with the addition of the following words, namely: "Embracing and including all and singular the choses in action, stocks, bonds, book accounts, bills receivable and other evidences of indebtedness, leasehold estates, contracts and other property mentioned and described in the lists and schedules to be exhibited at the sale and contained and described in the receiver's inventory of the real and personal property of the Erie Railway Company, also to be exhibited at the sale, not consumed or disposed of by the receiver in the discharge of his duty prior to the sale, and including all property of every kind and description acquired by the receiver during his receivership, with the proceeds of the rents, profits and issues of the mortgaged premises since the making of the said inventory, and not embraced therein, and excepting therefrom such portions thereof as will be declared excepted at the time and place of the sale; that the receiver's inventory of the real and personal

property of the Erie Railway Company referred to in the
terms of sale was exhibited at the sale, and it contained all
the mortgaged premises and also all the other assets, real and
personal, above described, not covered by the mortgages and
which were held by Jewett, as receiver in the People's action
for the benefit of the unsecured creditors of the company;
that there were present and exhibited at such sale lists includ-
ing not only the mortgaged premises and property, but
also other claimed estate and assets of the company which
were not covered by the mortgages; that the sale was made
to certain trustees under the reorganization plan; that on or
about the 25th day of April, 1878, an order was entered in
the foreclosure action confirming the sale and the report
thereof by the referee, and it was thereby ordered "that the
said referee be and he hereby is ordered and directed forth-
with to execute and deliver a proper deed or deeds of con-
veyance of all and singular the said premises, franchises and
property so as aforesaid sold, or intended so to be, to the said
purchasers or their assigns, on their complying with the con-
ditions on which, by the terms of said sale and by said decree,
such deed or deeds were to be delivered;" that on or about
the 26th day of April, 1878, the referee executed and deliv-
ered to such trustees, a referee's deed of the property sold
which described it in the words following, to wit: "All and
singular the property, franchises and estate, whether real, per-
sonal or mixed, and wherever situate, and whether within or
without this State, embraced and included in the said judg-
ment, and authorized and directed to be sold therein and
thereby, of which said property, franchises and estate, real,
personal and mixed, the following is a general and the best
practical description, that is to say." That then, in addition
to the description of the premises in the mortgages, were the
following words: "This description is to be understood as
embracing and including all and singular the choses in action,
stocks, bonds, book accounts, bills receivable and other evi-
dence of indebtedness, leasehold estates, contracts and other
property in the said judgment mentioned or therein directed

to be sold," with some exceptions not material now to be mentioned; that the Erie Railway Company also executed to the trustees a deed of even date with the deed mentioned of the same premises described as in the deed of the referee; that, thereafter, on the 27th day of April, 1878, the defendant, The New York, Lake Erie and Western Railroad Company was incorporated in pursuance of the reorganization plan, and thereupon the trustees executed and delivered to it a deed of the property held by them under the deeds of the referee and of the Erie Railway Company, above mentioned describing the same in the words used in those deeds; that on or about the 3d day of May, 1878, Jewett, as receiver, presented to the Supreme Court in the foreclosure action a petition for an order authorizing the delivery by him to the New York, Lake Erie and Western Railroad Company of the property sold in the foreclosure action; and that, thereupon, on that day an order was made in the foreclosure action, in which, among other things, it was ordered, "that the said receiver do transfer, deliver and surrender to the said New York, Lake Erie and Western Railroad Company, all the property and franchises whereof he is now possessed as receiver in this action, and which were embraced or intended to be embraced in the judgment of foreclosure herein, subject to the reservations and exceptions hereinafter specified, and subject to all and singular the rights of the people of this State in and to the premises, or any part thereof, as the same may be ascertained on due inquiry and examination by the attorney-general, in the action of the People of this State against the Erie Railway Company now pending, to the end that such rights and interests may be as fully protected as if this transfer had not been ordered and directed; and that, upon such transfer, delivery and surrender, the said receiver be, and he is hereby absolutely and forever discharged of and from any and all liability as receiver in this action, for the property and franchises so delivered, transferred and surrendered;" that on or about the 1st day of June, 1878, Jewett, as receiver, delivered to the New York, Lake Erie and Western Railroad Company all

the property referred to in that order, or the greater portion thereof, subject, however, to the terms of the order, and took· therefor a receipt from the New York, Lake Erie and Western Railroad Company containing a list of certain shares of stocks and bonds in other companies and other personal property; that none of the property specified in that list was, as matter of fact or law, embraced in or covered by any of the mortgages of the Erie Railway Company, or subject to the lien thereof or appurtenant to the mortgaged premises, nor was any of the same necessary for the use, operation or maintenance of the Erie Railway, and a great portion of the property was not the property of the Erie Railway Company or in its possession at the date of the mortgages; that no accounting whatever was had in the foreclosure suit by which it was or could be ascertained or determined what portion of the assets which came into the hands of the receiver was subject to the mortgages and what portion thereof was not so subject; and judgment and sale was had and the said assets were disposed of, as hereinabove described, without any such determination in said suit; and the New York, Lake Erie and Western Railroad Company took over the assets formerly owned by the Erie Company, expressly subject to such examination and determination to be duly and properly made under the direction of the court in the aforesaid suit of the People of the State of New York against the Erie Railway Company, or otherwise, and to the results of such examination; and no such accounting or determination has yet been had in that suit, or otherwise."

That on or about the 20th of May, 1878, on the petition of the attorney-general an order was made by the Supreme Court in the People's action, wherein it was ordered among other things as follows: " That James C. Spencer be and he is hereby appointed referee to examine, adjust and pass upon all the accounts, acts and doings of Hugh J. Jewett, receiver in this action, for and during the entire period of his said receivership, and that for the purpose of such accounting the accounts heretofore rendered by the said Hugh J. Jewett, as receiver in the action of the Farmers' Loan and Trust Company against

the Erie Railway Company and which had been examined and passed upon by the said James C. Spencer, as referee duly appointed in said action and approved by this court, shall be deemed and taken as accounts rendered and filed in this action, but shall not preclude the attorney-general from making such further examination of said accounts, acts and doings as he may deem necessary, and such action thereon by the referee and by this court as may be just and proper, nor preclude the attorney-general nor this court from requiring additional or more specific accounts by said receiver, and the said referee shall take testimony for the purpose of ascertaining what property or assets, if any, the said Hugh J. Jewett, as receiver in this action acquired, held or disposed of, not covered by or subject to the lien of the mortgage of the Erie Railway Company to the Farmers' Loan and Trust Company, which has been foreclosed, and, if any such property has been disposed of by said receiver, what disposition has been made thereof; and also what rights and equities, if any, the said Farmers' Loan and Trust Company, the purchasers at the foreclosure sale of the mortgaged premises, or their assigns, had or have in or to such property or assets, or any part or portion thereof; and that the said referee report to this court the testimony so taken by him, and the material facts which he shall deem established by such testimony, with his opinion thereon, for the further action of this court." That subsequently to the entry of that order, in the month of March, 1879, the People's action was discontinued as to all parties defendant except the Erie Railway Company and the Farmers' Loan and Trust Company, without prejudice to proceedings already had, that supplemental pleadings were served therein, setting up the foreclosure sale, and the conveyances hereinabove described, including the conveyance to the New York, Lake Erie & Western Railroad Company; and that the attorney-general under date of the 3d day of April, 1879, in his reply to the answer theretofore served, of the Farmers' Loan and Trust Company, made the following allegations, among others to wit:

"*First.* Alleges and shows, that at the time the receiver

heretofore appointed in this action entered upon the performance of his duties as such receiver, he became seized and possessed of all the assets of the said Erie Railway then in possession of said company, including a large amount of stocks and bonds of other corporations, real estate in the city of New York and elsewhere in the States of New York, New Jersey and Pennsylvania, and of certain property, choses in action and effects, which were not embraced in the mortgage known as the second consolidated mortgage of the Erie Railway company, nor subject to the lien thereof. And that also during his said receivership the said receiver has lawfully acquired for the benefit of the estate of the Erie Railway Company certain other property, including stocks and bonds of other corporations, which are not affected by said mortgage, nor subject to the lien thereof.

" *Second.* That said property was improperly, wrongfully and unlawfully included in the judgment entered in the action to foreclose, the said second consolidated mortgage, and in the sale thereunder, and was improperly, wrongfully and unlawfully included in the deeds to the purchasers at such sale and in the deeds to the New York, Lake Erie and Western Railroad Company from said purchasers and in the mortgage by said New York, Lake Erie and Western Railroad Company to the said Farmers' Loan and Trust Company, which deeds and mortgage are referred to in said answer of said Trust Company.

" *Third.* And the said plaintiffs deny that by reason of any proceedings had in said foreclosure action or by reason of any of said conveyances, or of said mortgages, the said Farmers' Loan and Trust Company has been, or is now invested with the title in trust or otherwise, to any of the aforesaid property, stocks, bonds, real estate and effects, or any part or portion thereof or has any right or claim thereto ; " that hearing upon these objections was had before Spencer, the referee, in the people's suit, to which hearing the People of the State of New York, by the attorney-general, the Erie Railway Company, and the defendant, the Farmers' Loan and Trust Company

were the only parties, and of which hearing no notice was given to unsecured creditors; that such proceedings were, thereupon, held; that on or abou the 25th day of November, 1879, a final judgment was entered in the People's suit, in which a report, theretofore made by the referee, was confirmed, and it was adjudged, among other things, as follows, to wit: "That the receiver in this action did not at any time acquire, hold or dispose of any property of any kind not covered by or subject to the lien of the mortgage of the said defendant the Erie Railway Company to the said defendant the Farmers' Loan and Trust Company which mortgage has been foreclosed as fully and at large set forth in the said reports of the said referee. That the judgment of foreclosure in the action of the said Farmers' Loan and Trust Company, * * * and the sale under the said judgment, and the conveyance made by the referee in pursuance of said sale, the conveyances and assignments subsequently made to the purchasers at such sale and by such purchasers to the New York, Lake Erie and Western Railroad Company, did vest in the said * * * company a good and valid title to all the property of every kind and description embraced and described in the said judgment and in the said several conveyances and assignments." "That the said defendant corporation, the Erie Railway Company, be and the same is hereby adjudged to be dissolved." "That whereas Hugh J. Jewett, was heretofore, by an order of this court, duly appointed receiver in this cause, and duly qualified as such receiver, it is further ordered, adjudged and decreed that said Hugh J. Jewett be and he is hereby continued as receiver of the Erie Railway Company, with all the power and authority conferred by law upon receivers of dissolved corporations in like cases;" that the Erie Railway Company was by that decree judicially dissolved; that during all this time the plaintiff and other persons referred to in the complaint similarly situated were unsecured creditors of the Erie Company, holding large obligations against it; that Jewett, as receiver in the People's suit, never advertised any notice of his appointment or any

notice to persons holding open or subsisting contracts of the Erie Railway Company, or other creditors, to present their claims to said receiver; nor did he call any general meeting or other meeting of the creditors of such corporation within four months from the time of his appointment, or at any time, for the ascertainment and adjustment of open and subsisting contracts of said corporation, or for any other purpose; and he did not, previous to rendering his account under the foregoing order of reference, or at any time, publish a notice of his intention to present an account, in the State paper, or in a · newspaper published in the county of New York, which was the county in which was the principal place of conducting the business of said Erie Company, or in any county, specifying the time or place, at which such accounts should be rendered; nor did he in anywise comply with any of the provisions of the statutes of the State in that behalf and hereinbefore recited; but, on the contrary thereof, he purposely and without authority of law, and with the unlawful intent to prevent the general creditors of said Erie Company, including this plaintiff and those similarly situated, from being heard in said proceedings, abstained from complying and did not comply with any of the provisions of the said statute so as aforesaid recited, and which provisions encroached upon the rights of the said persons and creditors, and were to be strictly pursued; and there was no opportunity or notice given to all concerned in said accounting, or to this plaintiff or those similarly situated, or to any one holding claims upon open or subsisting engagements of the Erie Company, to be heard by the court in said suit of the People on the accounting of said receiver or otherwise, and the court did not hear the allegations of all concerned in said accounts, and the court did not at any time decree the said accounts to be final or conclusive upon all the creditors of such corporation, or upon the persons who have claims against it upon open or subsisting engagements; and the said court did not have or acquire any jurisdiction in said suit, or otherwise, at any time or in any manner as against

such persons or creditors as aforesaid, including this plaintiff, and those similarly situated, to make the said order of reference hereinbefore recited, or any order or decree which should or could deprive such persons and creditors or this plaintiff of their legal rights in the premises or estop or bar them from asserting the same in any court of competent jurisdiction, or from pursuing in such court their legal remedies against the property of the said company wherever found, or in whose possession soever the same might be; and said accounting and decrees, and all the aforesaid proceedings, prior or subsequent, for the determination of the question whether any of the assets received by said Jewett, as receiver, were held by him free from the lien of the mortgages of the Erie Company, and liable to be distributed among the unsecured creditors of the said company, were and are wholly without jurisdiction and void, and are not binding upon or a bar to this plaintiff or those similarly situated with him, he and they having had no opportunity or notice to be heard in the above described actions on the determination of the said question, as by the statutes of this State they had a right to have; and that the same cannot, nor can either or any thereof, without the com-mitting of a fraud in law upon the persons and creditors aforesaid, including this plaintiff and those similarly situated, be interposed as a bar or estoppel, upon their right to pursue the property of the said Erie Company, wherever the same may be now found; and this plaintiff insists, notwithstanding the said proceedings and decrees, that a very large amount of property, consisting of real estate, stocks and bonds of other corporations and other assets, did come into the hands of said Jewett as receiver, which were not affected by or subject to the lien of the aforesaid mortgages, and a portion of which, to an amount not known to this plaintiff, but believed by him to be of the value of many hundreds of thousands of dollars, have been transferred and delivered to said New York, Lake Erie and Western Railroad Company, which assets comprising not only the property enumerated in the receipt let forth in this complaint, but also other assets of large value, constitute

a fund as hereinabove described, wherever they may be traced, for distribution among the unsecured creditors of the said company, including this plaintiff and those similarly situated with him." The plaintiff prayed judgment that the estate late of the Erie Railway Company not covered by the mortgages mentioned be adjudged and "decreed a trust fund, to be applied as the court may direct to the payment and satisfaction of the interest accrued and yet to accrue upon said Western Extension bonds of the Atlantic and Great Western Railroad Company bearing the guaranty of the Erie Railway Company, according to the terms thereof, except so far as said interest has been paid by net proceeds of dividends upon the shares of the Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company ; that any and all orders, decrees, accountings or proceedings in suits hereinabove described, which may or which can be alleged or claimed to bar or estop the rights of this plaintiff and of other creditors of said company similarly situated with him, to pursue, recover and enjoy the property of said Erie Company not embraced in and covered by the mortgages of the Erie Company hereinabove described, be adjudged and decreed, as to this plaintiff and the said creditors of the Erie Company, fraudulent in law and without jurisdiction on the part of the court purporting to have made the same, and void, and to constitute no bar or estoppel against this plaintiff or said other creditors from pursuing and recovering. said property in whose hands soever the same may be found ; and that the said orders, decrees and proceedings, and each thereof may be, as to this plaintiff and said other creditors, vacated, annulled and set aside ; that the sale of the property of the Erie Railway Company, now or formerly in the possession of the said Jewett, as such receiver, to wit: All stocks, bonds and interests in other corporations, and patent rights, licenses and other property, real or personal, not covered by the mortgage to the Farmers' Loan and Trust Company, or subject to the lien thereof, may be declared to be invalid and void and that such sale may be annulled and set aside, that an accounting be had of such property," and

for other relief. All the decrees, legal proceedings, orders and judgments referred to in the complaint are by reference made parts of the complaint. Certain other facts appearing in and by the papers so referred to, are stated in the opinion. To this complaint the defendants severally demurred on the ground that certain parties named were necessary parties defendant to the action, and that the complaint did not state facts sufficient to constitute a cause of action.

*J. Alfred Davenport* for appellant. In actions by the people for the dissolution of railway companies, the Supreme Court is a " court of general jurisdiction, acting in the exercise of special statutory powers." (*Ferguson* v. *Crawford*, 72 N. Y. 259; 1 R. S. art. 2, tit. 4, chap. 8, part 3.) The intent of the legislature is, that in proceedings for the dissolution of corporations, the claims of the creditors of the dissolved corporations and their conflicting rights and interests in the assets, are to be ascertained and adjusted by the agency of the receiver appointed upon dissolution on notice published in a specified way, to all the creditors, and with opportunities to be heard. (*Rinn* v. *Astor Ins. Co.*, 59 N. Y. 143.) All acts done by the corporation after the commencement of the proceedings, which could in any way affect or abridge the title sought to be vested in the final receiver, are absolutely void as against the receiver and as against the creditors of the corporation. (2 R. S. 469, § 71; *Davenport* v. *City B'k of Buffalo*, 9 Paige, 12; *Atlas B'k* v. *Nahant B'k*, 23 Pick. 480; *Rinn* v. *Astor Ins. Co.*, 59 N. Y. 143; *In re Waterbury*, 8 Paige, 382; *Sands* v. *Hill*, 55 N. Y. 22; *Galway* v. *U. S. Sugar Co.*, 13 Abb. Pr. 211, 215; *Hutchinson* v. *U. S. Central Mills*, 2 id. 394, 401; *Church* v. *South Side Co.*, 1 Hun, 636.) The appointment of a temporary receiver does not in any way affect the right of property. (Kerr on Receivers, chap. 6.) A final receiver in trust for liquidation could not be appointed prior to decree of dissolution. (*People* v. *Wash. Ice Co.*, 18 Abb. Pr. 382; *Montgomery* v. *Merrill*, 13 Mich. 338.) The title of the final receiver relates back to

the date of the commencement of the action by the people, and is absolute, by relation from that time. (*In re Barry*, 26 Barb. 55 ; *Atlas B'k* v. *Nahant B'k*, 23 Pick. 480 ; *Montgomery* v. *Merrill*, 13 Mich. 338.) The foreclosure decree was void by statute as to creditors because it was based on the consent of the Erie Company, given after the commencement of the people's action, and when, therefore, the Erie Company was prohibited by statute from giving its consent. (2 R. S. 469, § 71 ; 8 Paige, 382 ; 55 N. Y. 22 ; 9 Paige, 12.) A receiver of the property of a corporation can be appointed only in a civil action. (Laws of 1870, chap. 151 ; *Clinch* v. *S. S. R. R. Co.*, 1 Hun, 636 ; Code, § 471.) The title of the receiver, prior to dissolution, is merely possessory and inchoate, while after dissolution it is vested in the receiver as trustee, with power of sale, and to pay debts and settle controversies on notice to all creditors of the corporation. (Kerr on Receivers, chap. 6 ; *People* v. *Wash. Ice Co.*, 18 Abb. Pr. 382 ; *Montgomery* v. *Merrill*, 13 Mich. 382 ; *Bradt* v. *Benedict*, 17 N. Y. 93 ; *Bangs* v. *Duckingfield*, 18 id. 592, 596 ; *Att'y Gen'l* v. *Utica Ins. Co.*, 2 Johns. Ch. 371 ; *Att'y Gen'l* v. *B'k of Niagara*, Hopk. 354 ; *Att'y Gen'l* v. *B'k of Chenango*, Id. 596 ; *Verplank* v. *Merc. Ins. Co.*, 1 Edw. Ch. 84, 88 ; *Ferris* v. *Strong*, 3 id. 127.) Section 444 of the Code, which is indissolubly linked, by section 471, with proceedings under section 38 of the Revised Statutes, is mandatory, not only upon the attorney-general, but also upon the court. (*People* v. *Supervisors*, 51 N. Y. 401 ; *Phelps* v. *Hawley*, 3 Lans. 160 ; 52 N. Y. 26 ; *In re Van Allen*, 37 Barb. 225, 228 ; *Rossie* v. *Galena Lead Co*, 9 Paige, 598, 601 ; *Rex* v. *Barlow*, 2 Salk. 699 ; *Ralsten* v. *Crittenden*, 13 Fed. Rep. 508–512 ; *Mason* v. *Fearson*, 9 How. [U. S.] 248, 259 ; *French* v. *Edwards*, 13 Wall. 506 ; *Blake* v. *Portsmouth & C. R. R. Co.*, 39 N. H. 435 ; *Estate of Valentine*, 45 Cal. 696 ; *Stearns* v. *Franklin Co.*, 48 Mo. 167. *Low* v. *Dunham*, 61 Me. 566.) When a statute gives a new right, or a new power, and at the same time provides a specific, full and adequate mode of executing the power or enforcing the right given, the fact that a par-

ticular mode is prescribed, will be regarded as excluding by implication the right to resort to any other mode of executing the power or of enforcing the right. (*Johnson* v. *Louisville*, 11 Bush, 527; Dillon on Mun. Corp. § 653; 2 Burr. 1157; 6 Mass. 286; 11 id. 363; 12 id. 482; 36 Mo. 543; 4 Wend. 667; 4 Ind. 285; *Hardman* v. *Bowen*, 39 N. Y. 199; *Renwick* v. *Morris*, 7 Hill, 586, *Cook* v. *Kelly*, 12 Abb. 35; *Smith* v. *Lockwood*, 13 Barb. 309; *Dewey* v. *Goodenough*, 56 id. 55; *Sprague* v. *Birdsall*, 2 Cow. 419; *Almy* v. *Harris*, 5 Johns. 175; *Banks* v. *Darden*, 18 Ga. 342; *Lowerty* v. *Chamberlain*, 7 Blackf. 556; *Haw* v. *Hamburg*, 2 Ia. 460; *A. & M. T. Co.* v. *Gould*, 6 Mass. 40; *Riddick* v. *The Governor*, 1 Mo. 147; *Journey* v. *The State*, id. 428.) The presumption in favor of the jurisdiction of the court, and the evidence afforded by the recitals in its decrees, are one *prima facie*, and can be overthrown by proper allegations and proof, or by positive evidence on the face of the record itself, showing want of jurisdiction. (*Ferguson* v. *Crawford*, 70 N. Y. 253; *Sibley* v. *Waffle*, 16 id. 180; *Potter, Rec'r, etc.* v. *Merch. Bk. of A.*, 28 id. 641; *Freeman Nat. Bk.* v. *Smith*, 13 Blatch. 220; *Wright* v. *Douglass*, 10 Barb. 97; *Bloom* v. *Burdick*, 1 Hill, 130; *Cook* v. *Farmer*, 11 Abb. Pr. 40.) The absence of notice to creditors, not only indirectly through their final receiver and trustee, but also directly to them, which the statute provided should be given to them immediately on the appointment of the final receiver, and which secured to them the right to be heard upon the ascertainment of claims, the distribution of assets, and the accounts, and which also gave them a right of appeal, was fatal to the jurisdiction of the court; their right to be heard in a litigation which was to decide the extent of their property having been taken away without notice to them, and, therefore, without due process of law. (*Austin* v. *Rawdin*, 42 N. Y. 155; *Rinn* v. *Astor Ins. Co.*, 59 id. 143; *Loan Ass'n* v. *Topeka*, 20 Wall. 655, 664; *People* v. *The Board*, 70 N. Y. 228, 234; *Stuart* v. *Palmer*, 74 id. 188, 195; *County* v. *S. Pac. R. R. Co.*, 13 Fed. Rep. 723; *Wilkinson* v.

*Leland*, 2 Pet. 658; *Cooper* v. *Bd. of Works*, 14 C. B. Rep. 190; 13 Fed. Rep. 783; *Rex* v. *Wilkes*, 4 Burr, 590; *Attorney-General* v. *Worcester*, 16 Jur. 3; *Ware* v. *Regent*, 5 id. [N. S.] 25 · *People* v. *Brooklyn*, 89 N. Y. 75; *People* v. *Booth*, 32 id. 397; *Davis* v. *Mayor, etc.*, 14 id. 528.) The temporary receiver did not represent the plaintiff or those whom he represents, in their right to contest the claims of each other as creditors to participate in the fund in his hands. (71 N. Y. 401; *In re N. Y. El. R. R. Co.* v. *Man. R. Co.* 63 How. Pr. 14, 26; *Negus* v. *City*, 62 id. 298; *Curtis* v. *Leavitt*, 15 N.Y. 9; *Hubbard* v. *Guild*, 2 Duer. 685.) The appropriation of the property in question for the sole benefit of the purchasing company being without due process of law, impaired the obligation of the contracts held by the plaintiff, and by those whom he represents, and for that reason, also, the proceedings by which such transfer was affected was void. (*Brashear* v. *West*, 7 Pet. 608; *Davenport* v. *Lacon*, 17 Conn. 278; *Bowen* v. *Lease*, 5 Hill, 221; *Sibell* v. *Remsen*, 33 N. Y. 95; *Loring* v. *U. S. C.*, 36 Barb. 329; *Harris* v. *Thompson*, 15 id. 65; *Judson* v. *Rossie*, 7 Paige, 601; *Att'y-Gen'l* v. *Ins. Co.*, 77 N. Y. 272; *Att'y-Gen'l* v. *L. Ins. Co.*, 4 Paige, 226; *McCracken* v. *Hayward*, 2 How. 612; *Bronson* v. *McKenzie*, 1 id. 311; *Gunn* v. *Barry*, 15 Wall. 610, 623; *Antoin* v. *Greenhow*, 107 U. S. 769; *Chicago* v. *Sheldon*, 9 Wall. 50; *Curran* v. *Arkansas*, 15 How. 304; *Gordon* v. *S. F. Can. Co.*, 1 McAll. 573; *Rinn* v. *Astor F. Ins. Co.*, 59 N. Y. 141, 147.) Where courts of general jurisdiction act in the exercise of special statutory powers, a want of jurisdiction over the person or subject-matter may be shown by extrinsic evidence as well as by the face of the record. (*Ferguson* v. *Crawford*, 70 N. Y. 253, 259; *Craig* v. *Town of Andes*, 93 id. 405; *Bolton* v. *Jacks*, 6 Rob. 198.) The jurisdiction of any court exercising authority over a subject, may be inquired into in any court and in any proceeding, directly or collaterally, where such proceedings are relied on. (*Craig* v. *Town of Andes*, 93 N. Y. 405; *Elliott* v. *Piersol*, 1 Pitts, 328; *Chen. Canal B'k* v. *Judson*, 8 N. Y. 254; *Davidsburgh* v. *Knick. Ice Co.*, 90 id. 526;

*People ex rel. Tweed* v. *Liscomb,* 60 id. 568 ; *People ex rel. Rogers* v. *Spencer,* 55 id. 1 ; *Davis* v. *Packard,* 6 Wend. 327 ; *Bloom* v. *Burdick,* 1 Hill, 130 ; *People* v. *Cassell,* 5 id. 164 ; *Hard* v. *Shipman,* 6 Barb. 621.) Where the State prescribes conditions under which a court may act, those conditions cannot be dispensed with by litigants, for in such a case the particular condition or status of the party or the subject-matter is made a jurisdictional fact. (*Met. Nat. B'k* v. *Lord,* 90 N. Y. 530 ; *Risley* v. *Phœnix B'k,* 83 id. 495 ; *Hoag* v. *Lamont,* 60 id. 96.) If want of jurisdiction is shown, the alleged record becomes no record and the rights of parties will be determined as if the record did not exist. (*Hard* v. *Shipman,* 6 Barb. 621 ; *Craig* v. *Town of Andes,* 93 N. Y. 405.) When the statute prescribes the mode of acquiring jurisdiction, the mode pointed out must be complied with, or the proceeding will be a nullity. (*Bloom* v. *Burdick,* 1 Hill, 130.) Collusion and fraud, in a legal sense, arises whenever a trustee, at the solicitation of interested third parties, refuses to perform his trusts, and with such parties procures a judgment of a court that he, the trustee, need not perform such trust. (*Marsh* v. *R. R. Co.,* 40 N. H. 531 ; *Solomans* v. *Levy,* 6 Eng. R'y Cas. 389 ; Story's Eq. Plead. § 427.) The complaint having been brought by the plaintiff on his own behalf, and on behalf of all others similarly situated, as the beneficiary of an express trust, against a delinquent trustee, hostile in personal interest, and to bring back into court a trust fund allowed by the said trustee to be alienated in the direction of his own personal interest, against the terms of the trust and without authority of law and by collusion, and, at least, constructive fraud, the plaintiff is entitled to equitable relief ; and it was not necessary, in order to maintain this action, that the plaintiff should have recovered judgment and caused execution to be returned unsatisfied ; or that he should have proved his claim before the delinquent and hostile trustee. (*F. L. & T. Co.* v. *M. I. & N. R. R. Co.,* 21 Fed. Rep. 264 ; *In re Howard,* 9 Wall. 174 ; *Williams* v. *Gibbs,* 17 How. [U. S.] 257 ; *Gillespie* v. *Alexander,* 3 Russ. 130 ; *Sturges* v.

*Vanderbilt,* 73 N. Y. 384; *St. L. R. R. Co.,* 17 Fed. Rep. 872; *Nat. B'k* v. *Ins. Co.,* 104 .U. S. 54, 70, 71; *Goodwin* v. *Cincinnati,* 18 O. St. 169; *Everingham* v. *Vanderbilt,* 51 How. Pr. 177; 12 Hun, 75; *Crouse* v. *Frothingham,* 97 N. Y. 105; *Miller* v. *Davidson,* 8 Ill. 518, 522; *Alsager* v. *Rowley,* 6 Ves. Jr. 748; *Holland* v. *Prior,* 1 M. & K. 237; *Dewey* v. *Moyer,* 72 N. Y. 70; Story's Eq. Jur. § 581; *Weetjen* v. *Vibbard,* 12 N. Y. 265; *Hagen* v. *Walker,* 14 How. [U. S.] 17; *Bate* v. *Graham,* 11 N. Y. 237. *Galveston* v. *R. R. Co.,* 1 Wood's C. C. 368; *Kincaid* v. *Dwinelle,* 59 N. Y. 548; *Shillington* v. *Howland,* 55 id. 372; *Hetzell* v. *Turnshall Co.,* 4 Abb. [N. C.] 42; *Curran* v. *Arkansas,* 15 How. 304; *Case* v. *Beauregard,* 101 U. S. 690; *Pendleton* v. *Perkins,* 49 Mo. 565; *Merch. Nat. Bk.* v. *Paine,* 18 R. I. 592; *Farrar* v. *Haseldon,* 9 Rich. Eq. Rep. [So. Car.] 331, 336; *Rinlock* v. *Meyer,* Speer's Eq. Rep. [So. Car.] 427; *Borroughs* v. *Elton,* 11 Ves. Jr. 29, 36; *McCulloch* v. *Norwood,* 58 N. Y. 566; *Mumma* v. *Patomac Co.,* 8 Peters, 281; *Vose* v. *Grant,* 15 Mass. 505; *Spear* v. *Grant,* 16 id. 9.) The unmortgaged assets can and should be followed into the hands of the New York, Lake Erie and Western Railroad Company and applied in satisfaction of plaintiff's claim. (*Adair* v. *Shaw,* 1 Sch. & L. 262; *Wood* v. *Dummer,* 3 Mason, 308; *Scammon* v. *Kimball,* 13 Nat. Bk. Reg. Rep. 445; *Curran* v. *State of Arkansas,* 15 How. [U. S.] 304; *In re Le Blanc,* 14 Hun, 8; 75 N. Y, 598; Kerr on Fraud and Mistake, 317; *Calcough* v. *Sterum,* 3 Bligh, 181, 186; *Piers* v. *Piers,* 1 Dr. & Wal. 215; *Rolleston* v. *Morton,* 1 id. 177; *Toulmin* v. *Steere,* 3 Mer. 210; *Gore* v. *Stakpole,* 1 Dow. 30; 1 J. & L. 257; *Miller* v. *Rutland & Washington R. R. Co.,* 36 Vt. 452; *Pickett* v. *Logan,* 14 Ves. 238; *Warner* v. *Blakeman,* 4 Keyes, 487; *Duncan* v. *Jandon,* 15 Wall. 165; *Oliver* v. *Piatt,* 3 How. [U. S.] 401.) The position that the suit is defective because neither the Erie nor the Atlantic companies were made parties defendant, is not well taken. (*Vincent* v. *Parker,* 7 Paige, 66; *Attorney-General* v. *Continental Life*

*Ins. Co.*, 27 Hun, 195 ; *Hyde* v. *Lynde*, 4 Comst. 392 ; *Wiswell* v. *Samson*, 14 How. 52 ; *Rinn* v. *Astor F. Ins. Co.*, 59 N.Y. 143, 147; *Brewster* v. *Silence*, 4 Seld. 207; *De Rider* v. *Schemerhorn*, 10 Barb. 638; *Allen* v. *Fosgate*, 11 How. Pr. 218.) The words "franchises, privileges and rights," in the descriptive clause of the mortgage refer to the franchises, privileges and rights which were conferred upon the corporation by its charter, and do not extend the lien of the mortgage to rights of property acquired by the company, and not covered by the other words of the description. (*Smith* v. *McCullough*, 3 Morrison's Trans. 4 ; *Parish* v. *Wheeler*, 22 N. Y. 494 ; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 285 ; *Milwaukee R. R. Co.* v. *M. & C. R. R. Co.*, 20 Wis. 174.) A mortgagee cannot follow the proceeds of his mortgage. He has no claim or lien in law or in equity, outside of the provisions of the mortgage. (Jones on Mortgages, § 670 ; *Angell* v. *Pitts*, 78 N. Y. 239 ; *Rider* v. *Bagley*, 84 id. 461 ; *Galveston R. R. Co.* v. *Cowdrey*, 11 Wall. 459, 482 ; *Gilman* v. *Ill. & M. Tel. Co.*, 91 U. S. 603 ; *Noyes* v. *Rich*, 52 Me. 115.) The mortgage does not affect property acquired by the Erie Company after its date and not appurtenant to the railroad. (*In re N. C. S. & B. Iron Co.*, L. R. 6 Eq. 514 ; *Dinsmore* v. *R. & M. R. R. Co.*, 12 Wis. 649 ; *Shamokin Valley R. R. Co.* v. *Livermore*, 47 Penn. St. 465 ; 3 Woods, 1619 ; *Brainard* v. *Peck*, 34 Vt. 496 ; *Smith* v. *McCollough*, 104 U. S. 25 ; *Morgan* v. *Donover*, 58 Cal. 241.) The plaintiff is not guilty of laches. (*Fort* v. *Gooding*, 9 Barb. 388 ; *Hardy* v. *Ames*, 47 id. 413 ; *Clayton* v. *Wardell*, 2 Bradf. 1–7 ; *Williams* v. *Gibbs*, 17 How. [U. S.] 257 ; *Hagan* v. *Walker*, 14 id. 17 ; *Platt* v. *Platt*, 58 N. Y. 646 ; *Clinch* v. *S. S. R. R. Co.*, 1 Hun. 636.)

*George F. Comstock and William W. MacFarland* for respondents. If a trustee neglected his duty, and a loss resulted, he would be personally liable, and be subject to removal ; but the course and method of administration would not be changed. (*Olney* v. *Tanner*, 10 Fed. Rep. 101.) Where a court of equity is in the actual possession of a fund for

distribution among creditors generally, creditors at large, as well as others, will be protected and provided for according to the course and practice of the court, (*Bacon* v. *Robertson*, 18 How., U. S. 480; *Judson* v. *Rossie*, 9 Paige, 598; *Schuehle* v. *Reiman*, 86 N. Y. 270. *Blossom* v. *R. R. Co.*, 1 Wall. 656.) The court is absolutely without jurisdiction to assist a creditor at large to obtain satisfaction of his debt by the processes and methods of equity. (*Brinckerhoff* v. *Brown*, 4 John. Ch. 671; *Dunlevy* v. *Talmage*, 32 N. Y. 457; *Greenwood* v. *Broadhead*, 8 Barb. 539, 593; *Wiggins* v. *Armstrong*, 2 John. Ch. 144; *Durant* v. *Supervisors*, 26 Wend. 103; *Hadden* v. *Spader*, 20 John. 554; *Ocean B'k* v. *Olcott*, 46 N. Y. 17; *Allen* v. *Thurston*, 53 id. 622; *Geery* v. *Geery*, 63 id. 252; *Produce B'k* v. *Morton*, 67 id. 199.) Since jurisdiction is limited to judgment creditors, the impossibility of obtaining a judgment in consequence of death, the absence of assets, the insolvency and dissolution of a corporation, or any other event, will not enable the court to entertain the action. (*Estes* v. *Wilcox*, 67 N. Y. 265; *Sturgis* v. *Vanderbilt*, 73 id. 384, 385; *Lawrence* v. *B'k of the Republic*, 35 id. 320; *Jones* v. *Green*, 1 Wall. 330; *Public Works* v. *Columbia College*, 17 id. 529; *Smith* v. *R. R. Co.*, 99 U. S. 398.) The judgment and sale in foreclosure are conclusive upon plaintiff and a bar to this action. (*Grignon* v. *Astor*, 2 How [U. S.], 319; *Bronson* v. *R. R. Co.*, 2 Black. 524; *Stout* v. *Lye*, 103 U. S. 66; *Candee* v. *Lord*, 2 Comst. 269. *Bangs* v. *Duckinfield*, 18 N. Y, 592; *Cooper* v. *Reynolds*, 10 Wall. 316.) There is nothing to prevent the bringing of an action for a foreclosure of a mortgage, and the prosecution of that action to judgment against the corporation. (*Kincaird* v. *Dwinelle*, 59 N. Y. 548; *In re. Waterbury*, 8 Paige, 380; *Knauer* v. *Globe Mut. Ins. Co.*, 46 Super. Ct. 370; *Bostwick* v. *Menck*, 40 N. Y. 383.) As all creditors of the class of the plaintiff were necessarily represented in the action by the People, that judgment concludes the plaintiff in the same way, and with the same effect, as it concluded the people. (*Brennan* v. *Wilson*, 71 N. Y. 502.) No trust for creditors

was created by the receivership.  (High on Receivers, §§ 1, 2, 3, 4, 5, 6.)  Equity would preclude the assertion of the claim under the circumstances, if it were as meritorious as it is otherwise.  (*Hilton* v. *Fonda*, 86 N. Y. 339; 19 L. R., Ch. App. 1; *Basset* v. *Nosworthy*, 2 Am. L. Cas. in Eq. 1; *Branch* v. *Jessup*, 106 U. S. 475, 476; *Harwood* v. *R. R. Co.*, 17 Wall. 78; *Sullivan* v. *Portland R. R. Co.*, 94 U. S. 806.

*Herbert B. Turner* for The Farmers' Loan and Trust Company, respondent.  The plaintiff not being a judgment creditor, could not maintain this action.  (*Dunlevy* v. *Tallmadge*, 32 N. Y. 460.)  Only a trustee should bring an action to enforce a trust obligation and if not the plaintiff he must be made a defendant, under allegations showing his refusal to act.  (*Coal Co.* v. *Blatchford*, 11 Wall. 170; *Knapp* v. *R. Co.*, 20 id. 117.)

Earl, J.  The plaintiff alleges that at the time of the commencement of the actions by the People against the Erie Railway Company for its dissolution, and by the Farmers' Loan and Trust Company for the foreclosure of the mortgages upon its property, it owned a large amount of stock and bonds in other corporations which were not covered by or subject to the mortgages; and he seeks now to reach that property and to subject it to the payment of certain unsecured obligations which he and other creditors, similarly situated, then held and still hold against the Erie Railway Company.  He finds in his pathway the orders and decrees made in the actions mentioned which must be brushed aside or disregarded before he can succeed.  He does not allege in his complaint that any fraud was practiced upon the court or any party to the action, and he does not assail those orders and decrees as in fact fraudulent and seek to have them vacated or annulled on that account.  He does not claim that if the court had jurisdiction, as against him and the other general creditors, to make them, that he can attack them collaterally or maintain this

action.   What he claims is that those orders and decrees, so far as they assumed to adjudicate upon or dispose of the property in question, were made without any jurisdiction and may, therefore, be disregarded, and that they furnish no obstacle to the maintenance of this action.   Hence the general inquiry upon which we are to enter is whether the Supreme Court had jurisdiction to adjudicate upon and dispose of the property by the orders and decrees made in those actions.

About the 25th day of May, 1875, the People's action was commenced for the dissolution of the Erie Railway Company upon the ground, among other things, that it was insolvent, and had been for one whole year; and the complaint in that action, besides other relief, prayed that Hugh J. Jewett, who was then president of the company, might be appointed receiver during the pendency of the action.   On the twenty-sixth day of May he was so appointed with power, as provided in the order appointing him, among other things, to prosecute and defend actions for or against the company, either in the name of the company or in his own name as receiver, and to maintain and preserve the corporate organization and franchises of the company until final judgment in the action. Thereafter application was made in that action on behalf of the Farmers' Loan and Trust Company for leave to commence an action against the Erie Railway Company to foreclose the mortgages held by it.   Such leave was granted, and on the 14th day of June, 1875, the foreclosure action was commenced in the Supreme Court.   In the prayer for judgment in that action the plaintiff, besides other relief, prayed that an inquiry might be had and an account taken of and concerning the premises and property mortgaged to the plaintiff in order that it might be fully and at large ascertained whereof the mortgaged premises consisted, and that Jewett might be appointed receiver in the action.   On the fifteenth day of June, by an order duly granted, Jewett was appointed receiver, in that action, of the mortgaged property, and he was specially authorized to receive and enforce possession of whatever he was bound to receive, to run and

operate the railway, to institute, as he might deem needful, whatever suits or proceedings he by counsel might be advised to be necessary and proper in the appropriate discharge of his duty as receiver, and to defend and resist any suit or proceedings which he should be so advised and should believe would otherwise be prejudicial to the property, interests or franchises committed to his charge, and generally to do and cause to be done in a lawful manner as receiver, what might be reasonable and needful in and about the care and preservation of the rights, interests and franchises on which the mortgages were a lien, or the discharge of his duty as receiver might render needful. These orders appointing Jewett receiver, and all the other orders in the two actions, were made in the same court, the same judge presiding, and thereafter Jewett must be deemed to have taken and held as receiver in the foreclosure action all the property covered by and subject to the mortgages and, as receiver in the People's action, all the other property of the company.

On the 6th day of April, 1876, upon an affidavit and notice of motion, an order was made by the court in the foreclosure action that the receiver should hold and deal with the stocks and bonds in question in all respects as a part of the general fund of the estate embraced in the mortgages, among other things, for the reimbursement to the plaintiffs in that action of all sums paid under the orders of the court out of the proceeds of the mortgaged premises for the discharge of debts due from the Erie Railway Company, at the date of the receiver's appointment, for labor and supplies, "without prejudice to any equitable rights and interests of the respective parties which may be established on final accounting," and he was also authorized to sell any part of the stocks or bonds at public or private sale and to use and apply the proceeds for the purposes of the trust.

The foreclosure action proceeded to judgment on the 7th day of November, 1877, which judgment recited that the bonds and stocks lawfully came into the possession of the receiver, and that they were held by him as part and parcel of the property and premises mortgaged to the plaintiff; and it

authorized the referee appointed to sell the mortgaged prem-
ises, to expose for sale and to sell as part thereof the stocks
and bonds mentioned which were described in the decree as a
portion of the mortgaged premises; and they were sold by the
referee.    The sale was afterward confirmed and the referee
was authorized to convey the stocks and bonds with the other
property, and he made such conveyance; and the Erie Rail-
way Company executed a similar conveyance of the same
property.    Afterward, upon the petition of Jewett in the
foreclosure action, an order was made by the court on the
3d day of May, 1878, by which it was ordered that the receiver
deliver to the New York, Lake Erie and Western Railroad
Company, " all the property and franchises whereof he is now
possessed as receiver in this action, and which were embraced
or intended to be embraced in the judgment of foreclosure
herein, subject to the reservations and exceptions hereinafter
specified, and subject to all and singular the rights ot the peo
ple of this State in and to the premises, or any part thereof,
as the same may be ascertained on due inquiry and examina-
tion by the attorney-general, in the action of the People of
this State against the Erie Railway Company, now pending,
to the end that such rights and interests may be as fully pro-
tected as if this transfer had not been ordered and directed."
In pursuance of that order and upon the terms thereof, he did
make the delivery, and that substantially terminated the pro-
ceedings in the foreclosure action.

But for the pendency of the People's action, it cannot be
doubted that the determination and judgment in the fore-
closure action would have been conclusive upon every one.
It was within the province of the court to determine what
property was actually embraced within or subject, in express
terms, or by subrogation or any other equitable principles, to
the mortgages foreclosed.

The unsecured creditors were not necessary or proper
parties to that action and had no right to intervene therein,
and any adjudication made against the mortgagor was binding
upon them.    (*Bronson* v    *R. R. Co.*, 2 Black [U. S.] 524;

*Stoute* v. *Lye*, 103 U. S. 66 ; *Candee* v. *Lord*, 2 N. Y. 269.) Jewett as receiver in the People's action was not a necessary party to that action. As temporary receiver he was not vested with the title to the property of the corporation; it was not divested of its property until final judgment of dissolution and the appointment of the final receiver. The temporary receiver was not a trustee for the creditors of the corporation, but he was a mere care-taker, custodian and manager of its property and franchises, under the direction of the court, during the pendency of the action, having lawful possession of the property; and if a trustee in any sense, he was a trustee for the corporation   Nor were the People in any sense a proper party to that action. They had no lien upon or interest in the property. The main purpose of their action was to procure a judgment dissolving the corporation, and any other relief they could obtain was incidental to that. The court could have permitted the People or the receiver in their action to intervene in the foreclosure action, if application had been made for that purpose, but whether it would or not, rested in its discretion.

The foreclosure judgment absolutely determined that these stocks and bonds were subject to the morgages and liable to be sold with the mortgaged premises. They were so sold, absolutely, the sale was confirmed and the referee was ordered to make the conveyance, including these stocks and bonds, to he purchasers · and all this was done without any violation of the rights of the general creditors. The title of the purchasers under the foreclosure sale was in no way made subject to the rights of the People in their action until an order was made, subsequently to the conveyances by the referee and Railway Company to the purchasers, for a delivery of the property by the receiver; and in that order it was for the first time provided that the delivery should be subject to all the rights of the People as they might be ascertained by the attorney-general in the People's action ; and the delivery was so made.

The adjudications made in the foreclosure action absolutely bound all the parties thereto, and none of them could there-

after be heard to say that they were not founded upon sufficient evidence. The Supreme Court having general jurisdiction of the parties and the subject matter is conclusively presumed to have had sufficient facts before it to authorize the judgment and the orders which were made, and neither the Erie Company nor any of its general creditors can now be heard to say that the judgment was not pronounced after full examination and investigation of all the facts upon which it was based. It imports absolute verity, and it must be presumed that these stocks and bonds were properly subject to the mortgages and were properly sold in connection with and as a part of the mortgaged property. (*Grignosis, Lessee,* v. *Astor,* 2 How. [U. S.] 319.) Where a court having jurisdiction of the subject matter and the parties pronounces judgment upon insufficient or illegal evidence, or mistakes the evidence or the law, the only remedy of any person aggrieved by the judgment is by an appeal therefrom or a motion in the action in which it was rendered; but it cannot be assailed collaterally. Therefore whatever rights the plaintiff has in this action grow out of the commencement and pendency of the People's action against the Erie Company, and such, indeed. is the contention of his learned counsel.

It cannot be claimed that the pendency of the People's action, in which a temporary receiver had been appointed, absolutely prohibited the commencement of the foreclosure action. That action was commenced after leave was regularly obtained by an order of the court made in the People's action. In the action for the dissolution of the corporation, the court was not bound to appoint a temporary receiver. It could have permitted the action to proceed to judgment, and then appointed a final receiver to be vested with the title of the corporate property, and with power to administer and distribute such property under the direction of the court. The temporary receiver was entirely under the control of the court. There was no statute regulating or prescribing his duties. He was what was called in the argument a common law receiver, with such powers and duties as in the exercise

of its equitable jurisdiction the court might devolve upon him. His duties were in the main to manage, protect and preserve the property and franchises of the company during the pendency of the action. The People's action could have been discontinued at any time by the order of the court, and the receivership vacated and set aside, and the property restored to the corporation, and thus fully subjected to the action of the court in the foreclosure action. The whole matter was constantly under the control of the court until final judgment. Therefore, the court had the power to permit the foreclosure action to be commenced and to proceed, to appoint a receiver therein and to supersede the receiver appointed in the People's action, to transfer all the duties of the receiver in that action to the receiver appointed in the foreclosure action and to order all the property covered by the mortgages to be delivered to such receiver. The judgment in the foreclosure action appears to have been regularly obtained. There was service of process upon, and appearance by the Erie Company, and an answer admitting the allegations of the complaint. That answer entitled the plaintiff to judgment against it.

But it appears in the record that the attorneys for the Erie Company, more than two years after the commencement of the foreclosure action, consented to the entry of the judgment therein, and this, it is claimed, rendered the judgment absolutely void against the final receiver in the People's action, and the creditors of the corporation under section 71, 2 Revised Statutes, 469, which provides as follows: " All sales, assignments, transfers, mortgages and conveyances of any part of the estate, real or personal, including things in action of every such corporation made after the filing of the petition for dissolution thereof, in payment of or as security for any existing or past debt, or for any consideration, and all judgments confessed by such corporation after that time, shall be absolutely void as against the receiver, who may be appointed on such petition, and as against creditors of such corporation." That section was aimed, not at the disposition

of the corporate property made under the order of the court
by its receiver, or even by the corporation, but at the volun-
tary disposition of its property by the insolvent corporation;
and the confession of judgment prohibited was one made by
the corporation as its voluntary act without the interference
of the court, and not a judgment like this which rests upon
no confession, nor even consent, but upon the action and
order of the court at a regular term and session thereof.
Such a judgment is in no sense a judgment by confession.
If, therefore, it be assumed that section 71 was applicable, it
was not violated.

The People's action was one in equity under the Revised
Statutes (2 R. S. 463, § 38), which provides as follows:
"Whenever any incorporated company shall have remained
insolvent for one whole year, or for one year shall have neg-
lected or refused to pay and discharge its notes or other evidences
of debt, or for one year shall have suspended the ordinary and
lawful business of such corporation, it shall be deemed to have
surrendered the rights, privileges and franchises granted by
any act of incorporation, or acquired under the laws of this
State, and shall be adjudged to be dissolved." That section
was unrepealed in 1875, and it is conceded that under it, as
originally enacted, an action could be brought in equity for
the dissolution of a corporation in the cases mentioned, that
in such an action, both a temporary and final receiver could
be appointed, who would be common law receivers possessing
the powers and charged with the duties devolved upon them
by the orders of the court in the exercise of its equity juris-
diction, that they would not be controlled by the provisions of
law which regulated the appointment of receivers in the case
of the voluntary dissolution of corporations under part 3,
chapter 8, title 4, article 3 of the Revised Statutes, and that if
the Code which was in force in 1875, did not operate upon
receivers appointed in actions commenced under that section,
then all of the proceedings in the People's action and the fore-
closure action were so far regularly conducted within the
jurisdiction of the court that the plaintiff is in no position to

assail them. But his contention is that while the temporary receiver appointed in the People's action was a common law receiver, whose powers and duties were not regulated by statute, yet that when Jewett became a final receiver in that action, his powers and duties then became subject, under the Code, to the statutory provisions referred to; and for the present we will proceed upon that assumption.

Upon that assumption, then, what could be done under the authority and direction of the court by Jewett, as temporary receiver, in both actions, before judgment and his appointment as final receiver in the People's action? He had such powers and duties as temporary receiver as the court conferred upon him. He could manage, control and care for the property of the corporation, and, until final judgment in the People's action, the general creditors of the corporation had no right to notice and no absolute right to intervene, or to a hearing. The receiver could reduce the property to possession without consulting them; he could manage the railways under the order of the court and incur and discharge debts, sell and buy property in the ordinary business of the company; and he could bring and defend actions without any notice to or right of interference by the general creditors. If, after his appointment as receiver in the People's action, he had found a large amount of the assets of the company in the possession of adverse claimants, he could have commenced suits therefor, either in his own name or that of the company, and if he had failed in the suits, and judgment had gone against him, the adjudications would have bound the creditors of the Erie Company. If he or the Erie Company had been sued for a debt, a judgment in the suit would have bound the creditors of the company. Here, before final judgment, there was a claim made on the one side by the holder of the mortgages that these stocks and bonds belonged to it under the mortgages and that they were in equity part of the mortgaged estate. On the other hand, the People claimed that they were not covered by the mortgages and could not properly be sold under the foreclosure judgment or transferred to the purchasers on the foreclosure

sale; and the People claimed that the purchasers under that sale did not get good title, and thus there was a controversy as to this property. That was a controversy which the court had a right to determine before judgment like any other controversy respecting the property in the hands of its receiver. It appointed a referee to investigate the facts and to report thereon. An apparently thorough and exhaustive investigation was made in which the people, through their attorney-general, participated, and as a result of it, the court determined that these stocks and bonds did come under the mortgages, that they were properly sold with the mortgaged premises, that the purchasers at the foreclosure sale obtained a good title to them, and that they never, in fact, came to the possession of the receiver appointed in the People's action. So far no statute was violated and no statutory right of the general creditors was disregarded. They were represented in the litigation by the People and by their debtor, and any judgment rendered or decision made was binding upon them as it was binding upon the actual parties to the litigation. The court was not bound to defer that litigation until a final receiver was appointed, but had the right to permit it to proceed to a conclusion before final judgment in the People's action. The fact that Jewett was receiver in both actions makes no difference. We may assume, for the purpose of testing the matter, that there was a different receiver in each action, and that they both claimed this property and that there was thus a controversy to be settled. It cannot be doubted if such had been the case that the court would have had jurisdiction to permit one receiver to sue the other for the purpose of settling the controversy, and that a decision made in such a litigation would be binding upon everybody.

It matters not that this controversy and litigation involved all the assets of the corporation which were not plainly covered by the mortgages. The same principles must rule whether the amount involved was large or small. If the receivers could under the direction of the court engage in a litigation over a single steam engine, or over a debt of

$100,000 for or against the corporation, and bind the corporation and its creditors by the result, upon precisely the same principles he could engage in this litigation to which the people and the corporation were also parties and bind the corporation and its creditors by the result.

There was no distribution of the assets of the corporation in violation of the rights of the final receiver, or of its general creditors. It was judicially determined that these assets were subject to the mortgages, and that was a determination, as we have seen, which the court could make without the presence of the general creditors except as they were represented by the People. The final receiver when appointed was vested with all the estate which the corporation had at the time of its dissolution, and these stocks and bonds which had been swept away by the mortgage foreclosure and sale were no part of that estate. The rights which the statutes secure to creditors in the case of a statutory final receiver of an insolvent corporation are such only as pertain to the property which comes to the receiver to be administered by him and distributed to creditors; and there is no statute which entitles them to notice or gives them the right to a hearing before the receiver except as to claims upon and their rights in such property.

There never was a time when the general creditors of the corporation had any vested right in these stocks and bonds or to be paid out of them, and the disposition made of them did not impair the obligation of their contracts with the Erie Company or deprive them of due process of law.

It is claimed on behalf of the plaintiff that the title of the final receiver related back to the commencement of the People's action and that, therefore, it overrode the disposition made of these stocks and bonds. But the equitable rule which gives a receiver title to the debtor's property, by relation as of the commencement of the action, is one adopted to defeat fraudulent, unwarranted and unjust dispositions of the debtor's property and to accomplish just and equitable ends; but it is not applicable to a case where property has been

legally disposed of under the direction of the court, and certainly has no application to a case like this where the property claimed for the final receiver was subject to a lien in favor of mortgage creditors and has been sold and disposed of by virtue of that lien during the pendency of the action.

There is a feature of this case which must be here more particularly noticed. After the termination of the foreclosure suit and the sale and transfer of the mortgaged premises to the new corporation, the New York, Lake Erie and Western Railroad Company, the latter company executed a new mortgage to the Farmers' Loan and Trust Company to secure a large amount of its bonds. After the final order of reference, among other things, to ascertain whether these stocks and bonds were covered by or subject to the lien of the mortgages, in March, 1879, the People's action was discontinued as to all parties defendant except the Erie Railway Company and the Farmers' Loan and Trust Company, and by leave of the court obtained in that action a supplemental complaint was served alleging the foreclosure proceedings and the sale and transfer under the foreclosure judgment, and other matters. To that complaint the Farmers' Loan and Trust Company in its answer thereto also alleged the foreclosure proceedings insisting upon the validity of the sale therein made and its title to these stocks and bonds under its mortgage. To this answer the attorney-general, on the 3d day of April, 1879, served a reply in which he denied that these stocks and bonds were embraced within the mortgages, and alleged that they were improperly, wrongfully and unlawfully included in the foreclosure judgment, in the sale thereunder and in the deeds to the purchasers at such sale, and denied that they or the Farmers' Loan and Trust Company acquired any title thereto. Thus an issue was framed by the parties to that action to be tried and disposed of before the referee appointed for that purpose. Even if final judgment could have been entered in the action before the trial and disposition of that issue, how can it be said that the parties and the court could not delay the entry of final judgment, until after the trial of that issue? It was

an issue framed before judgment, which it was quite proper to try before judgment, and the decision of that issue, embodied in the final judgment upon the report of the referee, that the bonds and stocks were covered by and subject to the mortgages and were legally transferred under the foreclosure sale, bound all the parties to that action and the persons who were represented by them. The People and the Railway Company represented the general creditors of the Railway Company and the Farmers' Loan and Trust Company represented the bondholders whose trustee it was.

Hence upon the assumption that the final receiver appointed in the People's action was clothed with the powers and subject to the duties of receivers in the case of the voluntary dissolution of corporations precisely as claimed by the learned counsel for the plaintiff, yet we reach the conclusion that during the pendency of that action and of the temporary receivership, the court had jurisdiction to make the orders and decrees complained of and to authorize the disposition which was made of this property.

But we need not stop here. Even if the reference to, hearing before, and decision by the referee Spencer had been after final judgment in the People's action, and the appointment of Jewett as final receiver with all the powers of a receiver in the case of the voluntary dissolution of a corporation, still our conclusion would be the same  Prior to the Code of Procedure, final receivers appointed in equitable actions, under section 38, were common law receivers, whose powers and duties were not regulated by statute (*Mann* v. *Pentz*, 3 N. Y. 415); and this is conceded by the learned counsel for the plaintiff. But he claims that the law was changed by that Code, and that in consequence of the provisions thereof the powers and duties of final receivers under section 38 were the same as were devolved upon a final receiver appointed in the case of the voluntary dissolution of a corporation. The Code, as originally reported and enacted in 1848, contained no provisions in reference to the winding up or dissolution of corporations, and section 38 remained unaffected. But in 1849,

section 430 of the Code was added, which provides as follows: "An action may be brought by the attorney-general, in the name of the people of this State, on leave granted by the Supreme Court, or a judge thereof, for the purpose of vacating the charter or annulling the existence of a corporation, other than municipal, whenever such corporation shall,

"1. Offend against any of the provisions of the act or acts creating, altering or renewing such corporation; or,

"2. Violate the provisions of any law, by which such corporation shall have forfeited its charter, by abuse of its powers: or,

"3. Whenever it shall have forfeited its privileges or franchises, by failure to exercise its powers; or,

"4. Whenever it shall have done or omitted any act which amounts to a surrender of its corporate rights, privileges and franchises; or,

"5 Whenever it shall exercise a franchise or privilege not conferred upon it by law.

"And it shall be the duty of the attorney-general, whenever he shall have reason to believe that any of these acts or omissions can be established by proof, to apply for leave, and upon leave granted, to bring the action in every case of public interest, and also in every other case in which satisfactory security shall be given, to indemnify the people of this State against the costs and expenses to be incurred thereby."

And then by section 444 it was provided that when judgment should be rendered against a corporation the court should have the same power to restrain the corporation, to appoint a receiver of its property and to take an account and make distribution thereof among its creditors as was given in article 3, title 4, chapter 8 of the third part of the Revised Statutes, and that it should be the duty of the attorney-general, immediately after the rendition of such judgment, to institute proceedings for that purpose. By section 68 of the Revised Statutes referred to, it is provided that such receivers shall have the power and authority conferred by law upon trustees to whom an assignment of the estate of insolvent debtors may be

made, pursuant to the provisions of the fifth chapter of the second part of the Revised Statutes. Section 70 provides that the receivers, immediately on their appointment, shall give notice thereof, which shall contain the same matters required by law in notices of trustees of insolvent debtors; and in addition thereto shall require all persons holding any open or subsisting contract of such corporation, to present the same in writing and in detail to such receivers at the time and place in such notice specified, which shall be published for three weeks in the State paper and in a newspaper printed in the county where the principal place of conducting the business of such corporation shall have been situated. In section 72 it is provided that after the first publication of the notice of appointment of receivers, every person having possession of any property belonging to such corporation, and every person indebted to such corporation, shall account and answer for the amount of such debt and for the value of such property to the receivers; and all the provisions of law in respect to trustees of insolvent debtors, the collection and preservation of the property of such debtors, the concealment and discovery thereof, and the means of enforcing such discovery, shall be applicable to the receivers so appointed and to the property of such corporation. Section 73 provides that such receivers shall have the same power to settle any controversy that shall arise between them and any debtors or creditors of such corporation by a reference, as is given by law to trustees of insolvent debtors; that the same proceedings for that purpose shall be had, and with like effect; that application for the appointment of referees may be made to any officer authorized to appoint such referees on the application of trustees of insolvent debtors, who shall proceed therein in the same manner, and that the referees shall proceed in like manner and file their report with the like effect in all respects. Section 74 provides that the receivers shall be subject to all the duties and obligations by law imposed upon trustees of insolvent debtors, so far as they may be applicable, except where other provisions shall be made; that they shall call a general

meeting of the creditors of such corporation within four months from the time of their appointment, when all accounts and demands for and against such corporation, and all its open and subsisting contracts, shall be ascertained and adjusted as far as may be, and the amount of moneys in the hands of the receivers declared. Section 79 provides how the receivers shall distribute the residue of the moneys in their hands among those who shall have exhibited their claims as creditors, and whose debts shall have been ascertained. Section 85 provides that the receivers shall be subject to the control of the Court of Chancery, and may be compelled to account at any time, and may be removed by the court. Section 90 provides that any decree or order of the Court of Chancery, made upon any petition presented pursuant to the provision of that article, or in the course of any proceedings therein, shall be subject to an appeal. By looking at the fifth chapter of the second part of the Revised Statutes (2 R. S. p. 41), we find that in section 7, it is provided that the trustees shall have power to sue in their own names, or otherwise, and to recover all the estate, debts and things in action belonging or due to the debtor, in the same manner and with the like effect as such debtor could or might have done if no attachment had been issued, or trustees appointed, or an assignment had not been made; and, among other things, to settle all matters and accounts between such debtor and his debtors or creditors, and to examine any person touching such matters and accounts on oath, and to compound with any person indebted to such debtor and discharge all demands against such person. Section 8 provided that the trustees, immediately upon their appointment, shall give notice thereof, and therein shall require, (1) all persons indebted to such debtor by a day and at a place therein to be specified, to render an account of all debts and sums of money owing by them respectively, to such trustees, and to pay the same; (2.) all persons having in their possession any property or effects of such debtor, to deliver the same to the trustees by the day so appointed; (3.) all the creditors of such debtor to deliver their respective accounts and demands to the trustees

or one of them by a day to be therein specified, not less than forty days from the first publication of the notice.  Section 19 provides that if any controversy shall arise between the trustees and any other person in the settlement of any demands against such debtor or of debts due to his estate, the same may be referred to three indifferent persons, who may be agreed upon by the trustees and the party with whom such controversy shall exist by a writing to that effect signed by them.  Section 26 provides that the trustees shall, as speedily as possible, convert the estate, real and personal, of such debtor into money; and section 27 provides that the trustees, within fifteen months from the time of their appointment, shall call a general meeting of the creditors of such debtor by a notice to be published in the same manner as before directed respecting the publication of the notice of their appointment, in which notice they shall specify the time and place of such meeting, which time shall not be more than three months, nor less than two months after the first publication of such notice; and every such notice shall be published at least once in each week until the time of such meeting.  Section 28 provides that at such meeting, or other adjourned meeting thereafter, all accounts and demands, for and against the estate of such debtor, shall be fairly adjusted, so far as the same can be ascertained, and the amount of moneys in the hands of the trustees declared; and further sections provide for the distribution of moneys in their hands.  Section 46 provides that such trustees shall be subject to the orders of the Supreme Court, and of the Court of Common Pleas of the county in which they were appointed, upon the application of any creditor, or of any debtor in respect to whom they were appointed, in relation to the execution of any of the powers and duties confided to them; and they may be removed by the Supreme Court for cause shown.  From this careful reference to the statutes, upon the assumption that they are applicable, it will be seen that there is nothing in them which requires a final receiver to consult the general creditors of the insolvent corporation in the prosecution or defense of any action.  He is required to publish certain notices and to call

a meeting of the creditors that their claims may be adjusted and the balance of the property in his hands, after the adjustment of the claims, may be determined. But it is still his duty to take into his possession the insolvent's estate and to use the legal means for that purpose, and he may commence and settle suits and, under the direction of the court, compromise claims, and he is subject at all times to the order of the court. In this case there was a controversy as to the ownership of this property, and as to whether it came to Jewett in the People's action or as receiver in the foreclosure action, and that was a controversy to be settled under the direction of the court; and by a reference and investigation and an orderly legal proceeding, it was determined that the property did not come to him as receiver in the People's action, but that it came to him as receiver in the foreclosure action; and that as receiver in the Peoples' action he had no title or claim thereto, and that the same was properly sold and disposed of in the foreclosure action. There is no provision of law which required that the general creditors should be made parties to that litigation, or have any notice thereof; and none of their legal rights were violated by carrying the same on without any notice to them. They were represented therein by the People through the attorney-general, and by the receiver, and by the defendant, the Erie Railway Company. They could undoubtedly have been permitted to intervene or to appeal from the judgment or any of the orders, if any ground of appeal existed. But they had no right to attack the same collaterally unless for fraud sufficient within the rules applicable to such cases to sustain an action to set aside a fraudulent judgment. These provisions as to notice by the receiver were mostly directory, and were not essential to the jurisdiction of the court. Their omission would constitute an irregularity against which any party aggrieved could have relief by application to the court in the proceeding or in the action. They had reference to the settlement of the claims against the debtor and the distribution of the debtor's property among creditors. But they had no pertinency whatever

until the estate should come into the hands of the receiver for distribution by him among those entitled to share therein.

Therefore, standing upon the very ground taken by the plaintiff, assuming the fundamental law to be precisely as he claims, yet we are unable to perceive how it can be said that the court did not have jurisdiction to make the final adjudication which was entered in the final judgment in the People's action. And if we are right in this conclusion, then there is no ground for the maintenance of this action.

But the magnitude of the interests involved in this action is such as to justify us in fortifying our conclusions by still further prolonging this discussion ; for, if the court had no right in the foreclosure action, in consequence of the pendency of the People's action and the temporary receivership therein, to determine whether these stocks and bonds were covered by or subject to the mortgages, then, for precisely the same reason, it had no right to determine what property was covered by the mortgages or how much was due thereon, and all the foreclosure proceedings are open to the collateral assaults of this plaintiff and other creditors.

We are of opinion that the learned counsel for the defendants are right in their claim that the proceedings in equity under section 38, for the dissolution of a corporation for the reasons therein stated, were unaffected by the Code of Procedure. It was provided in section 13 of title 2 of chapter 18, part 3 of the Revised Statutes (2 R. S. 579) that a writ of *scire facias* might be issued out of the Supreme Court upon the relation of the attorney-general against any corporation created or renewed by any act of the legislature, for the purpose of vacating or annulling such act on the ground that the same was passed upon some fraudulent suggestion or concealment of a material fact made by the persons incorporated by such act, or made with their consent or knowledge. That was contained in the article entitled " Of *scire facias*." Section 27 provided that whenever any judgment should be rendered for the vacating and annulling of any act of incorporation pursuant to the provisions of that article, the

Court of Chancery should have the same powers to restrain
the corporation created by such act, to appoint a receiver
of its property and effects, and to take account and make
distribution thereof among its creditors, as were given in
the third article of the fourth title of the eighth chapter
of that act, relating to the voluntary dissolution of corpo--
rations; and that it should be the duty of the attorney--
general, immediately after the rendering of any judgment
vacating and annulling any such act of incorporation, to insti-
tute proceedings for that purpose. Article second of the
same title is entitled "of information in the nature of *quo*
*warranto*, and in certain other cases," and section 39 provided
as follows: "An information in the nature of a *quo warranto*
may also be filed by the attorney-general upon his own
relation, on leave granted, against any corporate body when-
ever such corporation shall (1) offend against any of the pro-
visions of the act or acts creating, altering or renewing such
corporation; or (2) violate the provisions of any law by
which such corporation shall have forfeited its charter by
misuser; or (3) whenever it shall have forfeited its privileges.
and franchises by non-user; or (4) whenever it shall have
done or omitted any acts which amount to a surrender of its.
corporate rights, privileges and franchises; or (5) whenever·
it shall exercise any franchise or privilege not conferred
upon it by law. And it shall be the duty of the attorney--
general to file such information, in every instance in which
he shall have good reason to believe that the same can be.
established by proof." Section 49 provided that whenever·
it should be found or adjudged that any corporation against
which an information in the nature of a *quo warranto* should·
have been filed, had by any misuser, non-user or surrender,.
forfeited its corporate rights, privileges and franchises, judg-
ment should be rendered that such corporation be ousted, and
altogether excluded from such corporate rights, privileges and
franchises, and that the corporation be dissolved. And
section 51 provided that whenever any such judgment should
be rendered, the Court of Chancery should have the same

powers to restrain the corporation created by such act, to appoint a receiver of its property and effects, and to take an account and make distribution thereof among its creditors, as were given in the third article of the fourth title of the eighth chapter of that act, and that it should be the duty of the attorney-general, immediately after the rendering of any such judgment, to institute proceedings for that purpose. It is thus seen that there were two systems of procedure which might be carried on against insolvent corporations, or corporations which had done or omitted any act which amounted to a surrender of their corporate rights, privileges or franchises. One was a suit in equity by the attorney-general of his own motion without leave of any court under section 38 above referred to, in which a temporary receiver, and, after final judgment, a final receiver could be appointed, each of who, would possess such powers and duties as might be devolved upon him by the court uncontrolled by any statutory regulations. The other was a proceeding instituted by writ of *quo warranto* by the attorney-general after leave obtained of the court, which was a proceeding at law in which the corporation was entitled to a jury trial; and in that proceeding judgment could be rendered dissolving the corporation. The Supreme Court had no right to appoint a receiver, but after final judgment annulling and dissolving the corporation, the attorney-general was required to apply to the Court of Chancery for the appointment of a final receiver, and his powers and duties were regulated by the provisions contained in article three above referred to in reference to the voluntary dissolution of corporations. These two systems of procedure against corporations went along side by side, one in chancery and the other at law. Now what change did the Code of Procedure work? Section 38 was not repealed by that Code, but was expressly saved by section 471 thereof, and remained in force in 1875, when the People's action was commenced. The chapter of the Code which embraced section 430 was entitled " actions in place of *scire facias, quo warranto,* and of information in the nature of *quo warranto,*" and the title is quite

a clear indication that that chapter was not intended to take the place of article 2, title 4, chapter 8, part 3 of the Revised Statutes which contained section 38, and which was entitled "of proceedings against corporations in equity." Section 428, the first section of the Code chapter, provides that the writs of *scire facias* and of *quo warranto* are abolished, and that "the remedies heretofore obtainable in those forms may be obtained by civil actions under the provisions of this chapter," and section 429 provided, in substance, the same as was provided in section 13 of chapter 9 of the Revised Statutes above mentioned, simply substituting an action in the place of the writ of *scire facias*. Section 430 of the Code above set out is substantially the same as section 39 of the same chapter of the Revised Statutes, and was evidently intended to take its place ; and section 431 provides that leave to bring the action mentioned in the preceding sections may be granted upon the application of the attorney-general. Section 432 is a substantial re-enactment of section 28 of chapter 9, and section 442 of the Code is substantially like section 49 of chapter 9 ; and section 444 is a substitute for sections 27 and 51 of the same chapter.

It is, therefore, we think, quite clear that the chapter of the Code was simply intended to substitute actions in the form prescribed by the Code in the place of writs of *scire facias* and *quo warranto*, and to regulate the proceedings in such actions. But there was nothing in that chapter which took away from the court of equity the general power which it had always possessed, and which it had previously exercised under section 38, in actions for the dissolution of corporations for the reasons stated in that section, or which subjected the receivers appointed in such an action to the provisions of section 444 of the Code.

The actions commenced under section 430 of the Code, like those commenced by writ of *quo warranto* under section 39 of the Revised Statutes, for which it was a substitute, continued to be strictly legal actions in which the defendants had the constitutional right of jury trial, and neither a temporary

injunction could be issued nor a temporary receiver appointed. Section 444 made special provision for injunctions and receivers after judgment, and thus forbade them by implication at an earlier stage of the action. The maxim *expressio unius exclusio alterius* applies.

But this construction of the Code of Procedure is made still clearer by a reference to the present Code. By the repealing act, chapter 245 of the Laws of 1880, section 38 of the Revised Statutes was for the first time repealed, and section 1785 of the Code was substituted in its place. Section 1786 provides that the actions specified in the last section may be maintained by the attorney-general in the name of, and in behalf of the People. Section 1788 provides for the appointment of a temporary and permanent receiver in such an action; and by that section and the repealing act of 1880, the duties and powers of a permanent receiver so appointed were made the same as those of receivers in the case of the voluntary dissolution of corporations under the Revised Statutes. The sections to which we have referred, sections 1785, 1786 and 1788, are contained in article 3 of title 2, chapter 15 of the Code, and actions under that article could be commenced without leave of the court. Then in article 4 provisions are made for the commencement of actions by leave of the court, and those provisions are substantially like those contained in the Code of Procedure, and which, before that Code, were contained in that part of the Revised Statutes which related to writs of *scire facias* and *quo warranto* against corporations. When judgment has been rendered in an action provided for in that article, the final receiver is subject to the powers and duties which devolve upon receivers of corporations voluntarily dissolved, and all the actions under that article are triable by jury.

So it appears that the two systems of procedure against corporations which were provided in the Revised Statutes have been continued since the enactment of the Code. Under the one system the actions may be commenced without leave of the court, and they must be tried as equitable actions. Under the

other system the actions can be commenced only by leave of the court, and the parties are entitled to jury trial as matter of right. Under the present Code, for the first time, under both systems, by special provisions, a temporary injunction may be issued and a temporary receiver may be appointed during the pendency of an action, and the final receivers are subject to the provisions of law applicable to receivers in the case of the voluntary dissolution of corporations, whose powers and duties are regulated by law. Under the Revised Statutes when equitable and legal remedies were administered in different courts, there was reason for the existence of the two systems. But now, when all the remedies may be administered in the same court, it is difficult to perceive any reason for the continued existence of the two systems. But they do exist, and each must have its proper significance and operation.

We think, therefore, that it is clear that prior to 1880 there was no statute regulating the powers and duties of receivers appointed in the equitable actions commenced under section 38 of the Revised Statutes above referred to.

We have taken no notice of the act chapter 151 of the Laws of 1870, to which our attention has been called, for the reason that that act has no pertinency to any questions involved in this case. It did not extend injunctions and receiverships to new cases. It simply provided that they should be issued and granted in actions, and regulated the practice so as to prevent abuses which had previously been just cause for complaint.

There are other topics brought to our notice in the learned briefs submitted to us. They have not been overlooked; but the necessities of time and space forbid any attention to them here. We have written enough to show that the plaintiff does not by the facts alleged in his complaint set forth a cause of action against the defendants, and that the judgment should therefore be affirmed.

All concur, except FINCH and PECKHAM, JJ., dissenting.

Judgment affirmed.